All right, our next case is United States v. Henderson. And Mr. Sun, when you're ready, we'll hear from you. May it please the court. I'm Paul Sun. I represent Jamie Henderson. About three months after he was arrested by the Robinson County Sheriff's Department personnel, Mr. Henderson, while still in custody, gave a statement. In his statement, Mr. Henderson said he had been the middleman for a cocaine supplier, Red Cloud, since 2015. The arrest was in 2019. So since 2015, he had been the middleman for a cocaine supplier, Red Cloud, and he had trafficked 20 kilograms of cocaine. That statement by Mr. Henderson was the only evidence of Mr. Henderson having any relationship with Red Cloud. It was the only evidence that he was involved in any drug trafficking going back to 2015. And it was the only evidence that he had been involved in multi-kilogram sales or distribution of cocaine. Wasn't there a police officer who testified that there was a cooperating defendant who testified that Mr. Henderson got 40 kilos from Red Cloud over a several-year period? Not in the trial, Your Honor. So that was just his sentencing? That was his sentencing. All right. But there was a video at the trial that the jurors saw of him engaging in multiple drug transactions, correct? There was. Well, there was hand-to-hand transactions of some kind. That's on April 30, 2019. There is video evidence. But, again, and I'll hit this again later, but nothing in that video shows any connection to Red Cloud. When Mr. Henderson gave his statement, by my count, he identified 23 people that he had been involved in. None of those 23 people were involved in anything to do with that video evidence from the trailer in April 2019. But it did show that he wasn't dispensing illegal substances as some sort of help-the-community, heliomycinary activity on his part. I mean, it kind of looked like to me you were going through a fast food place, I mean, because there were drugs coming out both ends of the trailer. What we said in our brief, Your Honor, viewing the evidence in the light most favorable to the government, which we have to do because the jury found Mr. Henderson guilty, that on one occasion, the police officer testifying said, that looks like crack. So he engaged in a hand-to-hand transaction involving crack. You couldn't see what was going on other than a hand-to-hand transaction on those other occasions. But, yes, the evidence from that video in April 2019, in the light most favorable to the government, does show Mr. Henderson involved in small-quantity sales, not middlemanning for Red Cloud, which is what he said he did, not involved in multiple kilograms and not involved in any drug trafficking going back to 2015. That's what's charged in count one of the indictment. Count one of the indictments charges Mr. Henderson with a conspiracy beginning on or about 2015 and extending through April 30, 2019, to possess or possess with intent to distribute 500 grams or more of cocaine and a quantity of crack. The only way that there's any amount of cocaine like 500 grams or more comes from that statement. And, again, that statement by Mr. Henderson is, I'm middlemanning. I'm connecting Red Cloud, the supplier, to some number of these 23 different people that he identifies as a middleman, and it's a 20-kilogram transaction. So is your argument that since he would appear to be acting as direct distributor in the videos, that that negates an argument that he holds a separate economic position as a middleman? Your Honor, my position is, and the government takes this position too, is that's a different conspiracy going on in April 2019. That's from the government's brief at page 39, that they say we've actually proved two conspiracies here. At trial, the government argued that this video evidence was corroborating evidence of what Mr. Henderson said in his statement, that he was involved in Red Cloud. But, again, there's no evidence that Red Cloud is involved at all. There's no evidence that Mr. Henderson is middlemanning, and there's no evidence that he's involved in these multi-kilogram sales of cocaine. And what the Supreme Court has said, and both parties agree with the cases that are relevant here, the Opper case, the Smith case, the black letter rule is an uncorroborated statement by a defendant can't prove the underlying crime. There has to be corroboration, and the corroboration has to be substantial independent evidence that tends to establish the trustworthiness of the statement. And here's the key detail. Opper says this. This court says it in Stevens. This court says it in Rodriguez-Soriano. The corroborating evidence has to support the essential facts admitted. The essential facts admitted by Mr. Henderson in his statement, and what the government says is the conspiracy here, is he's in an agreement with Red Cloud. He's middlemanning for Red Cloud. But that video evidence doesn't have anything to do with Red Cloud. It doesn't have anything to do with middlemanning. It has, at least according to the government, something to do with other individuals. There's no common aim. There's no overlap of actors, the kinds of things that the court would look at as to whether there's a conspiracy here. So the uncorroborated statement by Mr. Henderson can't support the conspiracy charge. What other evidence there was of corroboration was testimony from Captain Sampson of the Robeson County Sheriff's Department. He was present when Mr. Henderson gave this statement, and he testifies at trial. Captain Henderson had been – I'm sorry, Captain Sampson had been with the Robeson County Sheriff's Department for 20 years. He had been with the drug division for 10 years. He'd been head of that division. And he says he recognized some of the names that Mr. Henderson gave. He recognized some of those names as drug traffickers. And he also said where Mr. Henderson had identified some places where these people lived, some of those areas and some of the names, that's consistent with my information. But again, that corroborating evidence doesn't go to the essential facts. The agreement that's the essential – the essence of the conspiracy charge is Mr. Henderson saying, I had an agreement to be the middleman for Red Cloud. I connected Red Cloud to this bevy of other people. What about the letter Appellant tried sending to his brother? Isn't that also some evidence of a conspiracy? Or would you say that doesn't matter because it's also from Appellant? Well, so first of all, it doesn't corroborate anything to do with Red Cloud, anything to do with middlemanning. Again, it doesn't relate to the conspiracy. But also, to Your Honor's point, the Supreme Court has said, this Court has said, that the corroborating evidence has to be substantial independent evidence. And so when a defendant – and this happens in Stevens, this happens in Rodrigo Soriano, where the defendant makes multiple statements repeating over and over again the facts that – or the confession of the facts. The courts say that's not independent evidence. It has to be independent corroborating evidence. And that's missing here. So the fact that most all of the evidence, except for the video, arguably, came from Appellant, dooms the government's case, is your argument? The conspiracy charge. Right. Because it's not corroborated by anything other than Appellant himself. Correct. And the video. The testimony from Captain Sampson just doesn't – is not sufficient. And that's the word that's used in Opper. It's also used in Stevens. This Court's decision in Stevens. What's sufficient is corroborating evidence that supports the essential facts admitted. And again, the conspiracy, the essential fact is the agreement, and the agreement is with – So if you're going to answer to Judge Thacker, I want to be sure I understand your answer. Are you saying that this letter, which when you read it, it could have several different meanings, could indicate that he was acting with others, that since he wrote that, even though he did not write it as a statement to the prosecutor or the police, that that's still disqualified because he wrote it? It's not independent. So yes, Your Honor, that is my answer. And again, more importantly, I would say it doesn't support the essential facts from Mr. Henderson's confession because it doesn't have anything to do with Red Cloud. It doesn't have anything to do with middlemanning. It doesn't have anything to do with 2015 and a pattern of drug trafficking. So that – and I do want to, again, as I said earlier, the government at trial says, well, there's all this video evidence, and that corroborates Mr. Henderson's statement. Well, it is independent. I would say that. It is independent. But it doesn't corroborate the essential facts, the agreement. The agreement that Mr. Henderson says as part of his statement is I'm the middleman for Red Cloud. And nothing in that video has anything to do with Red Cloud. It has to do with some other unidentified people who were there at the trailer over an eight-day period in April 2019. So the video evidence can't support Mr. Henderson's statement as the kind of substantial, independent, corroborating evidence. I'm sorry, Justice Becker, you looked like you were about to ask a question. I'll go ahead. So I want to address then the government's argument in their brief that – well, we actually proved two conspiracies. We proved the Red Cloud statement, Red Cloud conspiracy based on – And you said that's at page 39 of their brief? Yes. Is that what you said? Okay. Subheading number two. And so I do want to address that argument and respectfully contend that the government doesn't prove a separate conspiracy – doesn't prove the charge conspiracy by saying now, well, we actually proved two conspiracies. It can't work that way. We cited the McLean case that cites other Fourth Circuit cases but – and also Supreme Court cases where you have the rule – Does your argument, if they proved another conspiracy, it's not proof of the conspiracy with Red Cloud? That's alleged. Right. It's not proof of the alleged conspiracy. And what McLean says is that's when you are actually proving – and this isn't just me arguing this now. It's the government saying, we proved a second – we proved another conspiracy here. That's not sufficient proof of the conspiracy that's alleged, this conspiracy between – Did they argue that at trial, that they proved another conspiracy? Or is that something that's come up here on appeal now? They've come up with this – As I read – I'm sorry, Your Honor. As I read the trial transcript, it seemed to me that what the government was arguing consistently at trial was this video evidence supports – it corroborates Mr. Henderson's statement. So that – and Mr. Henderson's statement is, I'm the middle man for Red Cloud. I think the government recognized that that video evidence doesn't support the statement by Mr. Henderson, the essential facts of that confession. And it is a confession. I mean, it's a lengthy statement that he gives. The government actually showed only parts of it in the trial evidence. And the part that's before the jury, there was a transcript that was prepared, and that's at Joint Appendix 481 to 489, I believe. 481 to 489. That's the evidence that was before the jury from Mr. Henderson's statement. And it's about middle manning for Red Cloud. That's what he says he's doing. And then, as I said, by my count, there were 23 other – or 23 total names, Red Cloud being one of them, 23 names that Mr. Henderson said during the course of his statement that he said, I had something to do with all these people. And he's usually using first names or short names or abbreviations or some kind of reference without – there's a couple full names. But he's identifying people that he says are involved in this middle manning activity that he is undertaking with, he says, Red Cloud. I'll reserve the rest of my time. Thank you. All right. Let me – Judge Traxler, do you have any questions for Mr. Son? No. Thank you, Judge Agee. All right. Thank you. You've got some rebuttal time. All right. We'll now hear from Ms. Brown. Thank you. Lucy Brown for the United States, and may it please the Court. We've talked exclusively about defendant's statement and the corroboration for it, and the government stands by its arguments there. But this Court does not need to reach that issue. Defendant made a sufficiency claim. So the question before this Court is, in the light most favorable to the government, is there enough evidence to support the jury's verdict? Not the indictment, the jury's verdict. Here, the jury's verdict did not reflect the drug amounts with Red Cloud in the defendant's statement. Instead, it reflected the aspect of the conspiracy that took place centered around the trailer. This was amply supported by the presence of drugs. And why do you say that, that it supports what you're saying now and doesn't support this or didn't necessarily support the conspiracy? Certainly. So there's a special verdict form in this case. We alleged 5 kilograms or more. On the special verdict form, the jury was given the option of each of those gradations of drug weight, and they chose a quantity of cocaine. How much did they choose? A quantity. So some cocaine, less than 500 grams, less than 5 kilograms, just that there was some cocaine. And so is this argument you're making now, is that, does that go to what I just asked opposing counsel about this page 39 of your brief where you say, we've proved a second conspiracy, so that's why this Red Cloud conspiracy doesn't matter? I want to be very precise about what we said on page 39. We said it's the same issue. I disagree with what they told you, Your Honor. We said trial evidence also sufficiently showed defendant's agreement with several other individuals to carry out the same objective. This was always one conspiracy. I shouldn't say always. Since the superseding indictment, the one he was tried on, this was one conspiracy. So were you reading verbatim from your brief there? Yes, page 39. So where you say to carry out the same objective. Yes. You say that means that's the conspiracy with Red Cloud. No, Your Honor. No. Count one was broader than just Red Cloud. I think that's the fundamental misapprehension here. Count one was broader than just Red Cloud. We know this for several reasons. Since the superseding indictment. So in October 2020, Robeson County Law Enforcement reviewed those videos from the trailer. The next month, in November 2020, we superseded our indictment. And to count one, we added a quantity of crack cocaine. The defendant mentions cocaine, I believe, seven times in his statement. There is no mention of crack in that entire statement. But we added a quantity of crack cocaine. That only comes from the trailer aspect of the conspiracy. We also added count two, which is a 924C count for one of the videos that Your Honor can see where the defendant at the trailer pulls his gun out, sets it on the table next to his dinner, and does a couple hand-to-hand transactions. The drug trafficking offense that count two was in furtherance of was count one, the conspiracy. And count two only took place. And the part about taking the gun out and setting it on the table, that's on the video. You can see that on the video that the jury saw. Yes, and in the pictures in our brief. So that count two was in support of count one. And the count two only took place at the conspiracy. It's not based at all on the defendant's confession. But it alleges that that action supports that conspiracy in count one. So you're arguing if we remove this whole issue about Red Cloud and whether the statement was corroborated or not, there was still sufficient evidence for the jury to convict based on count one. Absolutely, for the jury's verdict. The jury found the quantity of cocaine that's supported by what was found at the trailer. There was a small amount on the defendant's person that he then threw under the car as law enforcement approached. There was also, I believe, about seven grams in the toilet. If we do focus on Red Cloud and the argument about the statement not being corroborated, what was the evidence of corroboration at trial? Certainly, and we stand by our arguments there. We just don't think the court has to reach them. So the evidence at trial was this case is different from this court's precedent in Stevens. Particularly, we've sort of focused on that one in a lot of ways. As my opposing counsel mentioned, he named a number of drug dealers, not just one. And the testifying witness, Captain Sampson, I believe – You mean appellant named a number of – Yes. Okay. Yes, sorry, I meant he counted 23 specifically. I didn't do that calculation, but I trust his number. So you're going to tell us what the supporting evidence is. Absolutely. At trial, the witness, Captain Sampson, said he named, I believe, nine of those and said, I know those are drug dealers. So we already have more than just I can name one drug dealer, yes, he's a drug dealer. He corroborated that nine of those were area drug dealers. How is that different – I'm sorry. No, you go ahead. How is that different from Stevens other than quantity of drug dealers? So I think quantity matters, but there are also other ways it's different than Stevens. I do think quantity matters. It's not just I know one guy who's a drug dealer. It's I can name nine right now that you know are correct. That does, I think, provide more corroboration that I'm in this world. Also different from Stevens, we have – aspect of the conspiracy and the confession. That's not true. In the confession, defendant mentions a drug dealer named Peanut. We had testimony, yes, Peanut is an area narcotics dealer. Defendant said he worked with him. We also have – I'm sorry. Go back. Where does Peanut come from? The defendant mentioned Peanut in his confession. He was one of those names of people. That's one of the 23. That's right. And the witness said at trial, yes, Peanut's a narcotics dealer we know of in our area. Peanut is also mentioned in the defendant's letter. And that letter, I think, is importantly a distinction from Rodriguez-Soriano. Rodriguez-Soriano does not say any statement from the defendant. It says on 290, statement to law enforcement. And that makes sense because – Which goes back to Judge Agee's question to opposing counsel, does it make a difference that it was not to law enforcement? And I think it importantly does, and I think that's faithful to Rodriguez-Soriano, which says there was nothing outside of his statement to law enforcement. And that makes sense given the motivation of this rule that you might think, well, perhaps there's coercive or whatever the motivations are behind not letting a confession stand alone. Those don't apply to statements the defendant wrote from jail, specifically thinking law enforcement and going to some lengths to make sure law enforcement would never see it. Right, arguably attempting to obstruct justice. That's right. And in that case, we don't have those concerns about maybe he's cuffing or maybe – So distilling this to a simple point, and I'll correct your argument, is that the letter that the appellant wrote to his brother and others from jail, because it references his relationship with Peanut, and Peanut's also included in the list of dealers in the confession, that that's supportive evidence. That's another piece of corroboration. We also have here, dramatically different from Stevens, defendant was a drug dealer. He was selling cocaine, crack cocaine. They had no drug evidence in Stevens. All they had in Stevens was him saying, and I'm part of the drug trade. Here we have defendants saying, I'm deeply embedded in the drug trade, and we have the trailer aspect that shows, yes, he sure is. He's got cocaine. He's got crack. He's got guns to protect his dealing. He's got co-conspirators there at the trailer to protect his dealings. So that makes a world of difference from Stevens, that, yes, here we can actually say, you told us you're a drug dealer, and here we can see you sure are a drug dealer. And in that respect, there's also consistency that the way he described in his confession his role in the drug trade, that he wouldn't have kilos of cocaine sitting around. He wouldn't necessarily have a ton of money. He didn't say that was his role. So I think there is more corroboration for the statement, but I don't think this Court needs to reach that question. This was always – Well, if we wanted more, tell us how the videos fit this. Absolutely. So the videos are part of the count one conspiracy. We talked about that, how the superseding indictment showed it was broadened to include the activity at the trailer. And so the videos are supportive in several ways, as well as other direct evidence that was there at the trailer. So the question there is, was the defendant involved in a conspiracy to distribute an amount of cocaine and an amount of crack cocaine? That's what the jury found for count one. And there is ample evidence to support that. So first we have actual drugs. We have crack cocaine and cocaine in his pocket. We have crack cocaine and cocaine in the toilet. We also have the number of guns there. We see on the video defendants sometimes with one in each hand. We see defendant with an AR-style rifle that was found in the trailer when the search warrant team came. We see other members of the conspiracy providing muscle or security there at the trailer with that AR-style rifle. We see the defendant in the deal, for example, that we talked about where he puts it on the table, specifically armed when doing this hand-to-hand transaction. We see him in another one with it stuck in his pocket. He is constantly protecting those drug deals he's doing. And you're saying all of this is corroboration of the Red Cloud conspiracy or this is going back to your the Red Cloud conspiracy doesn't matter because everything else supports the jury's special verdict? I understood that to be Judge Agee's question. And so, yes, that's what I'm addressing, that this is ample sufficiency of the evidence to support the jury's verdict. Okay, not the Red Cloud. All right, so on Red Cloud what we have is the video that he is a drug dealer, the detective's testimony that nine of the people he mentioned, the detective knows him and they are drug dealers, knows him. The letter, is that it? And the consistency that you wouldn't expect a middleman to have kilos of cocaine sitting around or huge sums of money, yes. And all those guns in the video? Yes. To protect them, okay. Yes, I would argue that. And then as to the jury's verdict, the issue that this court can decide this on, because the question is just was there support of the verdict, not the indictment. And the verdict didn't necessarily reflect all of that with Red Cloud. There's ample evidence of what happened at the trailer. So Mr. Sun says that there's a relevant distinction because of the statement about being a middleman, that that's a different level of activity than what you saw in the videos, that that wasn't a middleman, that was just a street dealer, so to speak. I also thought it was interesting that in the same confession where he describes himself as a middleman, he talks about what that means. And he says, I'm a networker. I'm out there meeting people. I'm essentially building this base of drug customers in the area. I think that's perfectly consistent with what we see in the video, which is I'm getting to know drug users in this area. I'm building my bench, so to speak, of people who want to buy drugs in this area. But I also think the conspiracy as charged didn't limit him to that middleman role. It included his drug activity, which included that activity at the trailer. Now, when we're talking about the trailer, I'm not saying his co-conspirators are the people who come up, get a crack rock, put it in their hand, give him money, and we never see it again. It's not the buyer-seller that we're talking about that's that conspiracy. It's those other people there at the trailer who are providing protection or security or muscle or who know to throw the drugs in the toilet on their way out when law enforcement shows up. So was Ray Cloud just a part of the total conspiracy package? Yes, Your Honor, as charged. Yes, Your Honor. As charged in count one. Yes, Your Honor. And we know that because the crack included in count one, which is not mentioned in the confession, and we know that because count two only occurred at the trailer and was in support of count one. This has always been one conspiracy. We established that at trial. We talked about it in opening. We talked about it at the Rule 29. We talked about it in closing, that this was always an aspect of the conspiracy. And there's ample support for it. There's the drugs we talked about, the guns we talked about. There are the videos showing co-conspirator actions that we talked about where when the defendant, for example, does four hand-to-hand transactions in Government 16A, and we have photos of this in our brief, there is someone sitting probably from me to my counsel table chair on an air conditioning unit watching all of those transactions go down, that someone who's coming up knows there's protection here. There's also in another video where defendant briefly steps inside when he does that, leaving his gun on the table in the midst of a deal. Someone else comes out from inside, presumably at his direction, to provide some sort of cover. So we also have co-conspirator actions from those other people at the trailer, including the fact that when law enforcement showed up, it would seem they just started destroying evidence. They threw away a gun, threw another in a toilet, and threw other drugs in the toilet. We also have the letter that we talked about from the jail. That was to the trailer aspect of the conspiracy. That concerned the trailer crew, so to speak. And in it, the defendant... The trailer what? The trailer aspect of the conspiracy. The crew that was his co-conspirators at the trailer. And in it, the defendant said, I could easy have been a rat and told on everybody, but I'm going to trial. It's almost an admission from him directly that the people at the trailer who he's writing this letter to were his co-conspirators. How else could he have ratted on them? So there is ample evidence to support count one as the jury found, which is ultimately the question before this court. We haven't... I'm looking at this. Yes. Verdict. Yes. Form. So, yes. So they found him guilty on count one, and then where they were supposed to indicate the amount of cocaine, they didn't check the five kilograms or more. They checked a quantity less than 500 grams. And you're saying that relates to what, the cocaine base? No. That's a separate question. That's the next line. If Your Honor looks down, that's the cocaine base. That is consistent with the small amount of powder cocaine in his pocket and in the toilet at the trailer. It's not consistent with the confession concerning Red Cloud. The indictment, count one on the cocaine charges him with five kilograms or more, but they didn't check five kilograms or more. That's right. The indictment charged crediting the full Red Cloud statement. The jury did not convict as such. And that's why you're arguing that this verdict forms support. I understand now. Yes, Your Honor. It supports the jury's verdict regardless of this Red Cloud thing. That's right. Maybe the jury didn't buy the Red Cloud thing because there wasn't corroborating evidence of that. We can't fully know. We do know from the verdict they bought the aspect of the conspiracy at the trailer. It was always part of the indictment, and it was amply supported through the actual drugs, the guns, the video evidence, and the letter saying I could have ratted on everyone in the trailer, but I didn't. That count as convicted was amply supported, and that's the question before this court. We haven't discussed any of the other issues the defendant raised. I'd be happy to if Your Honors have any questions about those. Judge Traxler, do you have any questions of Ms. Brown? No, thank you, Judge Agee. All right. Well, thank you very much. Thank you, Your Honors. Please affirm. Mr. Sund, you've got some rebuttal time. May it please the Court. There's no overlap in actors. There's no overlap in a continuing scheme. All there is is a claim that Mr. Henderson was violating the same statute, the drug statute. And what this Court said in McLean, citing a case called U.S. v. Goss, is a conspiracy is not established when the only thing in common was the law that they were breaking. That's what's in common here. That's what they're saying. And another phrase that's used in McLean and other cases, Mr. Henderson is the common denominator. He is the common denominator in his red cloud or his statement about a red cloud conspiracy, where that's the agreement he has, and his activities at the trailer in April 2019. And again— Well, opposing counsel makes the argument that red cloud's just one piece of the total conspiracy proof, that it's a wider conspiracy and so the letter and the video all show this conspiracy and red cloud was part of it, but he wasn't exclusive or something to that effect. Understood, Your Honor. And I credit that argument, except it doesn't respond to the point that I was trying to make, which is there isn't anybody in common here. This is a week in April 2019. That's what the evidence is about, a week in April 2019, versus a five-year period where what Mr. Henderson says is he's operating as a middleman. So what about the overlap between this peanut in the appellant's statement and also in the letter he wrote from jail? So peanut is mentioned in the statement as someone he knew was a drug dealer in his statement. That's one of the 23 names. But peanut isn't someone who's there. The video evidence—I'm sorry, you asked me about the letter. Right. He does say something about peanut in the letter. That's correct. And it doesn't connect him as one of the conspirators. The conspirators are—and, in fact, this is what the government says, and I appreciate that the Court asked counsel whether she was quoting her brief. I cited page 39. This is page 42. Defendant may argue that even if all this evidence—and this is the video evidence— even if all this evidence showed a criminal conspiracy between defendant and his associates in 2019, that's what they argued. And that's a separate conspiracy. It's not all one conspiracy. And you can't prove the conspiracy that's charged by proving multiple conspiracies. That's what the cases consistently say, and that's what they're doing here. They're now sort of straddling between what they did at trial and what they did in—I would say what they did in their brief. And I'll credit counsel's argument. I understand the argument that she's making. I would say that's not quite what's stated in the brief. But I understand the argument. But it's still a different conspiracy. It's not the conspiracy that's part of the statement. And you can't prove the conspiracy that's charged—the conspiracy that's charged with multiple conspiracies. That's what they're doing here. They're saying there's a 2019 conspiracy—it's really eight days in April of 2019— Because his statement is about the multiyear conspiracy, and all of the evidence that the government has asserted corroborate that are only a one-week window. Is that what you're saying? It is. The video is from one week. First of all, there's no testimony from anybody. So how do we extrapolate this one week that has nothing to do with the red cloud to the conspiracy charged in the—account one of the indictment? There's no testimony from anybody that bought or sold from Mr. Henderson. There's no testimony from anybody that said he saw Mr. Henderson buy or sell cocaine. Well, the jury saw it in the video. Understood. And what they saw was an eight-day period. There's also no testimony about how long Mr. Henderson had been at that trailer. There's no testimony from any of the—there were three people who were there at the time of the search warrant. Two run out the back. One is left inside. So none of them testify. And the alleged 2019 conspiracy, a second conspiracy, can't support the charge in the indictment. Thank you. All right. Thank you very much. We appreciate argument from both counsel. Mr. Sonnen, we want to extend our special appreciation to you for taking this case on. You did take it on as court-appointed counsel, and the court's grateful for you doing that. Because we could not discharge our duties without assistance from folks like you. Thank you, Your Honor. So we'll ask the clerk to declare court and recess until 2.30 this afternoon. And we'll come down and greet counsel. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: G. Steven Agee, Stephanie D. Thacker, William B. Traxler Jr.